UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARBARA YOUNG-GIBSON,

                                    Plaintiff,

            v.                                              **DECISION AND ORDER**
                                                            08-CV-667S
PRAVIN PATEL,

                                    Defendant.


## I.  INTRODUCTION

Presently before this Court is Defendant Pravin Patel's Motion for Judgment on the Pleadings seeking dismissal of Plaintiff Barbara Young-Gibson's complaint.   For the following reasons, Defendant's motion is granted.


## II.  BACKGROUND

Defendant Pravin Patel owns the Best Western Dunkirk and Fredonia, a hotel located in Dunkirk, New York.  (Complaint, Docket No. 1, ¶ 4). Plaintiff is a resident of Glouster, Massachusetts. (Complaint, ¶ 1).

From August 1 to August 6, 2004, Plaintiff was a guest at Defendant's hotel while attending a business seminar. (Complaint, ¶ 4). Plaintiff's stay was unremarkable until August 4, when she alleges that she began to suffer from "migraine-like symptoms." (Complaint, ¶ 4). When these symptoms worsened, Plaintiff contacted her physician, Dr. Edward Foley, who prescribed Plaintiff medication. (Complaint, ¶ 4).

Since Plaintiff was far from home, Dr. Foley told her that he would send the

prescription to a pharmacy near her. (Complaint, ¶ 4). Dr. Foley did not tell Plaintiff to which pharmacy he planned to send her prescription, but he told her that he would provide that information. (Complaint, ¶ 4).

Plaintiff did not hear from Dr. Foley again until August 6. (Complaint, ¶ 5). This delay was allegedly not for Dr. Foley's lack of effort. (Complaint, ¶ 5). Plaintiff alleges that Dr. Foley attempted to reach her by telephone at the hotel 20 times, each time allowing the telephone to ring ten times. (Complaint, ¶ 5).  Plaintiff alleges that Defendant failed to answer the telephone, which prevented her from learning the location of her prescription. Plaintiff states that she suffered a number of ills while waiting to hear from Dr. Foley, including an eye infection that developed into glaucoma. (Complaint, ¶ 6). These afflictions required numerous doctor visits, surgeries, and expensive medications. (Complaint, ¶ 6).

Plaintiff filed this suit in the District of Massachusetts on August 6, 2007. The suit was transferred to this District on September 4, 2008.  Plaintiff is seeking $1,000,000 in damages for loss of her vision and other expenses that she allegedly incurred. (Docket No. 13[1];).

## III. DISCUSSION

### A.    Legal Standard

Rule 12 (c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for

---

[1] Although only $25,000 in damages is alleged in the compliant, see Complaint ¶ 7, Judge Gertner in the District of Massachusetts permitted Plaintiff to amend her complaint to allege $1 million in damages on April 23, 2008, see Docket No. 13.

judgment on the pleadings." Fed. R. Civ. P. 12 (c). Courts faced with motions under Rule 12 (c) apply the same standard used to decide motions brought under Rule 12 (b). Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. Goldstein, 516 F.3d at 56; ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility

3

standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief.  Id. at 1950; Fed. R. Civ. P. 8 (a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).  This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 129 S.Ct. at 1950.  First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away.  See Iqbal, 129 S.Ct. at 1950.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

This Court is cognizant of the distinct disadvantage that pro se litigants face and recognizes that federal courts routinely read the submissions of pro se litigants liberally, interpreting them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

**B.     Plaintiff's negligence claim**

To establish a claim of negligence, a plaintiff must demonstrate that (1) a duty exists, owed by the defendant to the plaintiff; (2) defendants breached that duty; and (3) an injury to the plaintiff proximately resulted from the defendant's breach.  Dean v. City of Buffalo, 579 F. Supp. 2d 391, 402 (W.D.N.Y. 2008) (citing Soloman v. City of New York, 489 N.E.2d 1294, 1294 (N.Y. 1985).

"Proof of negligence in the air, so to speak, will not do." Palsgraf v. Long Island R.R. Co., 162 N.E. 99, 99 (N.Y. 1928) (quoting Frederick Pollock, The Law of Torts 455 (11th ed. 1920)). Ignoring a ringing telephone can constitute actionable negligence only if this Court decides, as a matter of law, that the defendant innkeeper[2] owed a duty to the guest to answer. See Darby, 753 N.E.2d at 162.

Innkeepers are bound by a duty to exercise reasonable care for the convenience, comfort, and safety of their guests, which includes protecting those guests from harm and providing the inn as a safe harbor. Darby, 753 N.E.2d at 162; De Wolf v. Ford, 86 N.E. 527, 529 (N.Y. 1908); Taieb v. Hilton Hotels Corp., 131 A.D.2d 257, 260 (N.Y. App. Div. 1987); Restatement (Second) of Torts § 314A(2). New York courts have imposed liability upon innkeepers for failing to remedy dangerous conditions on the premises, failing to protect guests during emergencies, failing to protect guests from criminal attacks, and failing to respect guests' privacy and comfort. See, e.g., Darby, 753 N.E.2d at 162 (collecting Court

---

[2]While this Court recognizes that the terms "inn" and "innkeeper" may appear quaint to contemporary readers, Wassell v. Adams, 865 F.2d 849, 855 (7th Cir. 1989), this terminology is useful as a way to refer to the special legal relationship formed between owners of inns, hotels, motels, and other such places, and their transient guests, and will be used for that purpose throughout. See Hackett v. Bell Operating Co., 181 A.D. 535, 537 (N.Y. App. Div. 1918).

of Appeals cases imposing liability for conditions on the premises); De Wolf, 86 N.E. 527 (imposing liability after employee entered guest's room, insulted guest, and removed guest from inn); Taieb, 131 A.D.2d 257 (affirming liability for failure to post employees in stairwells to guide guests during fire evacuation); Pantages v. L.G. Airport Hotel Assocs., Inc., 187 A.D.2d 273 (N.Y. App. Div. 1992) (affirming liability for failing to question suspicious guests who later committed criminal acts upon premises). Innkeepers, however, are not insurers of their guests' safety. De Wolf, 86 N.E. at 530.

The scope of an innkeeper's duty expands no further than to encompass foreseeable risks. See N.X. v. Cabrini Med. Ctr., 765 N.E.2d 844, 848 (N.Y. 2002); Tagle v. Jakob, 763 N.E.2d 107, 109 (2001); see also In re New York City Asbestos Litig., 840 N.E.2d 115, 119 (N.Y. 2005). Chief Judge Cardozo's maxim that "[t]he risk reasonably to be perceived defines the duty to be obeyed" still resonates in New York, as does his conception of an "orbit," or zone, of danger, created by a defendant's conduct, within which a plaintiff must be located. See, e.g., Sanchez v. State, 784 N.E.2d 675, 678 (N.Y. 2002) (quoting Palsgraf, 162 N.E. at 100); Di Ponzio, 679 N.E.2d at 618 (quoting and citing Palsgraf, 162 N.E. at 100).

Modern New York courts graft an additional requirement onto the duty inquiry: liability will attach only if the plaintiff is harmed as the result of "an occurrence that is within the class of foreseeable hazards that the duty exists to prevent." Di Ponzio, 679 N.E.2d at 619; accord Zahrey v. City of N.Y., No. 98-4546 (DCP)(JCF), 2009 WL 1024261, at *3 (S.D.N.Y. Apr. 15, 2009) (quoting Di Ponzio, 679 N.E.2d at 619); Coniglio v. The Andersons, Inc., No. 03-CV-0153A(F), 2004 WL 1228393, at *6 (W.D.N.Y. Jun. 3, 2004)

(quoting In re Sept. 11 Litig., 280 F. Supp. 2d 279, 295 (S.D.N.Y 2003); Sanchez, 784 N.E.2d at 678 (citing Di Ponzio, 679 N.E.2d at 619); see Restatement (Third) of Torts: Phys. & Emot. Harm § 29 reporter's note, cmt. d (2010) (characterizing the Di Ponzio duty inquiry as a type of "scope of the risk" analysis). If the type of occurrence that caused the plaintiff's injury was outside of this limited class of hazards that are naturally associated with the defendant's duty, there is no liability. Di Ponzio, 679 N.E.2d at 620-21; Hanna v. Ford Motor Co., 252 A.D.2d 478, 480 (N.Y. App. Div. 1998) (finding that the hazards associated with loose lumber strewn about lumber yard did not include danger that the lumber would impede customer from escaping his own runaway vehicle, which was bearing down on him).

Moreover, even if the defendant had a duty to the plaintiff to take precisely the action that would have avoided the plaintiff's injury, such duty does not extend to occurrences caused by hazards falling outside of this class of hazards. See Di Ponzio, 679 N.E.2d at 619 (rejecting gas station's liability for injury to driver caused by a nearby car rolling into him, despite recognizing that gas station has a duty to ensure drivers turn off their cars to avoid fires and explosions, and discharge of such duty may have avoided the injury); Mei Cai Chen v. Everprime 84 Corp., 34 A.D.3d 321, 322 (N.Y. App. Div. 2006) (rejecting property owner's liability for injury sustained when plaintiff fell backward down stairs while struggling to open inward-opening door using defective door knob, despite assuming that property owner was negligent in failing to repair door knob). But the mere fact that the plaintiff was harmed in an unexpected manner does not relieve the defendant from liability. In re Sept. 11 Litig., 280 F. Supp. 2d at 296 (concluding that defendants could

be liable for negligently performed airport security screening even though the precise manner by which air crashes were inflicted was unprecedented); Sanchez, 784 N.E.2d at 678; Di Ponzio, 679 N.E.2d at 619.

This district is one of few to have considered a claim involving facts similar to the ones presented here.  In Dean, the court considered whether a hotel owner and operator could be held liable for failing to keep the front desk of the hotel staffed or otherwise ensure that a hotel employee would answer telephone calls originating from a guest's room. 579 F. Supp. 2d at 401-02. The plaintiff-guests alleged that they were unable to communicate with hotel employees to confirm the identify of persons demanding entry to their room, which caused them to deny entry to those persons. Id. at 395-96.  These persons were in fact police officers, who allegedly assaulted the guests after eventually forcing the guests out of their room. Id.

Upon a motion for summary judgment, applying New York law, the court found that the innkeeper's duty to protect guests from harm would apply to such circumstances. Id. at 403. The court characterized the hotel's failure to "answer every call to the front desk" as a possible breach of the hotel's duty to protect guests with reasonable safety precautions, akin to a failure to provide working door locks or peepholes. Id. at 403. But the court observed that the guests were able to reach a 911 operator using their telephone, who was able to tell the guests that police officers were sent to their room. Id. Thus, the court held that any alleged breach of duty by the hotel was not the proximate cause of the guests' injuries. Id. at 403-04.

Other courts have contemplated whether an inn's failure to allow a guest to

8

communicate could be a source of liability. See Wassell v. Adams, 865 F.2d 849, 855 (7th Cir. 1989) (Posner, J.) (proposing that a jury that was not "muddle-headed" could find that a motel's failure to provide each room with a telephone breached such motel's duty to protect guests from assault by third parties); Lewis v. Roescher, 98 S.W.2d 956, 957 (Ark. 1936) (declining, as a matter of contract law,[3] to impose a duty upon innkeepers to furnish guests with working telephones after a guest fell ill in his room and was unable to summon aid). Others still have considered whether innkeepers can be liable for failing to maintain particular staff positions or provide particular services. See Zerangue v. Delta Towers, Ltd., 820 F.2d 130, 132-33 (5th Cir. 1987) (invoking an innkeeper's duty to provide safe premises where a guest was locked out of a hotel in New Orleans at 3:00 a.m. and subsequently assaulted); Gumbart v. Waterbury Club Holding Corp., 27 F. Supp. 228, 229-30 (D. Conn. 1938) (holding that an innkeeper does not have a duty to provide each guest with a key, maintain staff at the front door of the inn during the night, or provide a wake-up call); Fortney v. Hotel Rancroft, 125 N.E.2d 544, 546-47 (Ill. App. Ct. 1955) (finding that an innkeeper's failure to maintain staff at the front desk, where room keys were kept, would breach such innkeeper's duty to protect guests from harm by third parties where guest was attacked by an unknown assailant upon returning to his room).

This Court need not resolve whether an innkeeper's duty could ever require the innkeeper to guard against unanswered telephones, as proposed by Dean and Wassell. Assuming arguendo that an innkeeper's failure to answer the hotel telephone does create

---

[3]Courts have described the duties of innkeepers using the language of both contract and tort. See Boyce v. Greeley Square Hotel Co., 126 N.E. 647, 649 (N.Y. 1920); De Wolf, 86 N.E. 527 (using the language of contract and tort in the same opinion).

some risk, reasonably to be perceived, that is sufficient to invoke such innkeeper's duty of care, the "class of foreseeable hazards" prong of the New York duty inquiry excludes Plaintiff's particular claim.

The guests in <u>Dean</u> and <u>Wassell</u> were unable to request assistance when faced with threats, real or perceived, by third party assailants. Similarly, the guest in <u>Lewis</u> was unable to summon help when threatened by illness. Though the court in <u>Lewis</u> ultimately concluded that the innkeeper was under no duty to provide the guest with telephone service, the guest's predicament illustrates the particular type of hazard which flowed from that inoperable telephone. If an innkeeper's failure to answer the telephone does create a risk sufficient to invoke such innkeeper's duty to protect, these three cases help define the class of foreseeable hazards that would be associated with that risk. This class of hazards comprises scenarios where guests are threatened with some type of harm but are unable to communicate their plight or request assistance. Thus, the innkeeper's purported duty would exist for the purpose of preventing guests from finding themselves in peril with no chance of outside assistance. Plaintiff would surely be within the zone of that danger.

Thus, Defendant's conduct may have created a risk and an associated class of hazards that posed a threat to Plaintiff. If Defendant ignored the hotel telephone, guests who needed help could have been left to languish in their rooms, unable to summon aid. Had Plaintiff, as her health deteriorated, attempted to call the front desk for help and received no answer, Defendant's duty to protect Plaintiff from harm might have applied. That scenario is much like <u>Dean</u>, and illustrates the type of hazard that could naturally flow from Defendant's failure to answer the telephone. Thus, that hazard would be part of the

10

class of foreseeable risks.

Here, however, the hazard Defendant allegedly created is quite different. Plaintiff alleges that Defendant's conduct placed her in danger, and that such danger caused her harm. That "danger," or hazard, that Defendant's conduct allegedly created was the risk that a guest could suffer harm by failing to receive outside communication. This purported hazard is of a much different class than the hazards found in <u>Dean</u>, <u>Wassell</u>, and <u>Lewis</u>, and is not part of the class of foreseeable hazards that an innkeeper's failure to answer the telephone could be said to create. In other words, if an innkeeper has a duty to answer the hotel telephone, that duty would not exist to prevent the type of hazard that Plaintiff alleges led to her harm. "In danger" would be a peculiar way to describe a hotel guest who is unable to receive an incoming telephone call, and further demonstrates why Defendant's duty as an innkeeper to protect Plaintiff does not extend to Plaintiff's circumstances. Even if Defendant had a duty to answer the telephone to avoid certain foreseeable hazards, and thus take precisely the action that Plaintiff alleges would have averted her injuries, as in <u>Di Ponzio</u>, <u>Hanna</u>, and <u>Mei Cai Chen</u>, Defendant's duty falls short because Plaintiff's injury was not the result of one of those hazards.

New York courts recognize the familiar principle that liability in negligence cannot be defeated simply because harm is inflicted in an unforeseeable manner. But as <u>Di Ponzio</u> warns, this tenet should not be confused with the class of foreseeable hazards requirement. 679 N.E.2d at 619 (citing Restatement (Second) of Torts § 281 cmts. e-f). A defendant can be liable for a harm-producing occurrence of an unusual or unpredictable manner, but the source of such an occurrence still must be traced to a hazard that was

within the class of foreseeable hazards created by the defendant's risky behavior. Id.

In re September 11 Litigation illustrates the important difference between these two principles. There, the court recognized that the harm-producing occurrence — the use of commercial aircraft as guided missiles — was unusual and perhaps unforeseeable. 280 F. Supp. 2d at 296. But the hazard — the potential for hijacked aircraft to crash and cause injuries and property damage — was within the class of hazards naturally associated with unreasonably deficient airport security screening. Id. Thus, liability for that unpredictable occurrence could still attach to the defendant's performance of the security screening procedure. Id. at 296-97.

Here, the harm-producing occurrence — Plaintiff growing increasingly ill while waiting to learn of the location of her prescription — also seems unusual. Pivotally, in contrast to In re September 11 Litigation, the hazard responsible for this occurrence — Plaintiff's inability to receive messages — was not within the class of hazards that would be associated with Defendant's purported duty to answer the hotel telephone. Thus, the somewhat unusual nature of the harm-producing occurrence is not the reason why Plaintiff's claim fails. Rather, Plaintiff's claim is outside of Defendant's scope of duty because the hazard at play is outside the limited class of hazards for which Defendants could be responsible for creating.

An innkeeper's duty is to provide a safe harbor. Even if Defendant's duty to Plaintiff should have compelled Defendants to answer the hotel telephone, the hazard that allegedly ensnared Plaintiff is not within the class of hazards that such a duty would exist to prevent. Because this Court finds that Plaintiff's harm was brought about by an

occurrence outside the scope of Defendant's duty as innkeepers, Plaintiff's complaint fails to state a claim upon which relief can be granted and must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 26) is GRANTED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated:        August 9, 2011
              Buffalo, New York


                                              /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                                  Chief Judge
                                        United States District Court